1
2
3
4
5
6
7          UNITED STATES DISTRICT COURT

8          EASTERN DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| ESTATE OF VINCENT FRANK BOSCAINO, JR., *et al.*, | Case No. 1:24-cv-00689-JLT-EPG |
| Plaintiffs, | ORDER DIRECTING CLERK OF COURT TO TERMINATE ROY BOSCAINO AS A PLAINTIFF |
| v. | FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT (1) THE KWPH DEFENDANTS' MOTION TO DISMISS BE DENIED (ECF NO. 25); (2) THE KWPH DEFENDANTS' MOTION TO STRIKE BE DENIED (ECF NO. 26); (3) DR. MONTERROSO'S MOTION TO DISMISS (AS CONVERTED FROM A MOTION TO STRIKE) BE DENIED (ECF NO. 15); (4) ADVENTIST HEALTH HANFORD'S MOTION TO DISMISS (AS CONVERTED FROM A MOTION TO STRIKE) BE GRANTED (ECF NO. 42); AND (5) DR. MONTERROSO'S AND ADVENTIST HEALTH HANFORD'S REQUESTS FOR JUDICIAL NOTICE BE DENIED AS UNNECESSARY (ECF NOS. 15-1; 42-2) |
| ADVENTIST HEALTH HANFORD, *et al.*, | |
| Defendants. | |
| | OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS |

## I.    INTRODUCTION

Plaintiffs' amended complaint, filed in part under 42 U.S.C. § 1983, brings Federal and California state law claims, primarily alleging that various Defendants failed to provide adequate medical care to Decedent Vincent Frank Boscaino, Jr., which ultimately led to his

death. (ECF No. 8). Various Defendants (specified below) now move to dismiss Plaintiffs' claims or to strike references in the amended complaint to punitive damages. (ECF Nos. 15, 25, 26, 42).

The presiding District Judge has referred all the relevant pending motions to the undersigned. (ECF Nos. 17, 28, 43). For the reasons given below, the Court will recommend that (1) the KWPH Defendants' motion to dismiss be denied (ECF No. 25); (2) the KWPH Defendants' motion to strike be denied (ECF No. 26); (3) Dr. Monterroso's motion to dismiss (as converted from a motion to strike) be denied (ECF No. 15); (4) Adventist Health Hanford's motion to dismiss (as converted from a motion to strike) be granted (ECF No. 42); and (5) Dr. Monterroso's and Adventist Health Hanford's accompanying requests for judicial notice be denied as unnecessary (ECF Nos. 15-1; 42-2).[1]

## II.    BACKGROUND

### A.  Summary of the First Amended Complaint

The Plaintiffs in this case are the Estate of Vincent Frank Boscaino, Jr. (administered by Shannon Villarroel); James Boscaino (Decedent's brother and successor in interest); Ronald Boscaino (Decedent's brother and successor in interest); Catherine Doss (Decedent's sister and successor in interest); and Susan Moss (Decedent's sister and successor in interest). (ECF No. 8, pp. 2-3). While the initial complaint also listed Roy Boscaino (Decedent's brother and successor in interest) as a plaintiff, he is not listed in the amended complaint. (*Compare* ECF No. 1, p. 3, *with* ECF no. 8, pp. 2-3). Accordingly, the Court will direct the Clerk of Court to terminate Roy Boscaino as a plaintiff.

The amended complaint names thirty Defendants and also lists "Does 1-100."[2] (ECF No. 8, p. 1). Many of the allegations concern things that prison employees purportedly did to Decedent while he was incarcerated, including at California State Prison, Corcoran, and are not directly relevant for resolving the pending motions. But generally, the amended complaint

---

[1] As explained below, the Court concludes that some of the motions to strike should properly be addressed as motions to dismiss.

[2] The Court has made minor alterations to quotations from the parties' filings, such as changing capitalization, without indicating each change.

2

alleges that Decedent was the victim of a conspiracy by employees of the California Department of Corrections and Rehabilitation (CDCR) "to deliberately fabricate criminal allegations against [him], setting into motion a series of events that exacerbated [his] known mental and physical illnesses and disability, and accelerated his deterioration." (*Id.* at 2). These events purportedly started around October 27, 2021, and on June 14, 2023, Decedent "died as a result of the deliberate indifference to his serious medical needs." (*Id.*).

Most pertinent here are the allegations against certain Defendants regarding Decedent's medical treatment on the day of his death. These allegations fall into two categories.

First, on June 14, 2023, a CDCR nurse "requested American Ambulance transport [Decedent] to Kaweah Medical Center for cardiac irregularity." (*Id.* at 18). American Ambulance is the business name of Defendant KWPH Enterprises, Inc., and it "contracts with CDCR to provide medical transportation and emergency medical services to individuals imprisoned at Corcoran." (*Id.* at 7). Defendant KWPH Enterprises, Inc. employs four of the Defendants as either paramedics or emergency medical technicians: (1) Daniel Linares; (2) Mark London; (3) Manuel Sandoval; and (4) Samuel Taylor. (*Id.* at 7-8). Unless otherwise specified, the Court will collectively refer to these Defendants as the KWPH Defendants.

As will be discussed later, the KWPH Defendants allegedly provided inadequate medical care to Decedent in connection with his transport to a hospital. For example, Linares and London delayed transporting Decedent despite knowing that he faced "an emergency situation and time was of the essence." (*Id.* at 18).

The second category of allegations concern the care that Plaintiff received upon his arrival at Defendant Adventist Health Hanford's emergency room. (*Id.* at 20-21). Adventist Health Hanford contracts with Defendant Dr. Mark Monterroso, who allegedly provided inadequate medical care to Decedent. (*Id.* at 8). Among other things, Dr. Monterroso delayed attending "to a code blue cardiac arrest at a critical time." (*Id.* at 20).

Pertinent here, the first amended complaint claims that (1) the KWPH Defendants acted with deliberate indifference to Decedent's serious medical needs (in violation of the Eighth

3

Amendment) and violated California's Tom Bane Civil Rights Act (the Bane Act);[3] (2) the KWPH Defendants, Adventist Health Hanford, and Dr. Monterroso committed negligence, medical negligence, and are liable for wrongful death and a survival claim. (*Id.* at 24, 29, 30, 31).

Among other relief, Plaintiffs seek punitive damages from the Defendants (collectively the KWPH Defendants, Adventist Health Hanford, and Dr. Monterroso). (*Id.* at 32).

### B.  Motions

The Defendants now move to dismiss claims or to strike references in the amended complaint to punitive damages. Specifically, the KWPH Defendants move to dismiss Plaintiffs' deliberate-indifference and Bane Act claims and to strike Plaintiffs' references to punitive damages (ECF Nos. 25, 26), and Adventist Health Hanford and Dr. Monterroso move to strike the references to punitive damages, including a request for judicial notice in their motions. (ECF Nos. 15, 42). All these motions have been fully briefed and are now ripe for decision.

Accordingly, the Court will address each motion in turn, beginning with the KWPH Defendants' motion to dismiss.

### III.    MOTION TO DISMISS STANDARDS

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Furthermore, Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002) (internal citation and quotation marks omitted).

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering a motion to dismiss, the Court must accept all

---

[3] Cal. Civ. Code § 52.1.

allegations of material fact in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). "[T]he court must construe the complaint in the light most favorable to the plaintiff, taking all [of the plaintiff's] allegations as true and drawing all reasonable inferences from the complaint in [the plaintiff's] favor." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). However, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a claim must be facially plausible, *i.e.*, the complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard is not akin to a "probability requirement," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## IV.    ANALYSIS

### A.  The KWPH Defendants' Motion to Dismiss

The KWPH Defendants' motion to dismiss challenges the deliberate-indifference and Bane Act claims against them. (ECF No. 25). It argues that the deliberate-indifference claim "fails on its face because [they] were never acting under color of law [for purposes of § 1983], and would be entitled to qualified immunity in any event, under the recent controlling Ninth Circuit precedent of *Perez v. American Ambulance*, 98 F.4th 919 (9th Circuit 2024)" and that "[t]he Bane Act claim is blatantly inapplicable to the facts alleged, and may not be brought in federal court under the exclusive venue provision of Cal. Civ. Code § 52.1(d)." (*Id.* at 6).

Plaintiffs argue that, because they allege that "CDCR contracted American Ambulance [the business name for KWPH Enterprises, Inc.] to transport prisoners and provide emergency medical services," they have sufficiently alleged that the KWPH Defendants acted under color of law in light of authority holding that a private party may become a state actor when it contracts with the state to provide constitutionally-mandated services.  (ECF No. 38, p. 5). Additionally, they contend that *Perez* does not apply to this case and does not entitle Defendants to qualified immunity. (*Id.* at 7-8). Lastly, they argue that the Bane Act applies to

their claims and such claims may be brought in federal court.

## 1. Color of law

The KWPH Defendants argue that the amended complaint fails to sufficiently allege that they were state actors for purposes of § 1983. (ECF No. 25-1, pp. 9-12). Plaintiffs argue that Defendants were state actors because they had a contract to provide medical services for CDCR prisoners. (ECF No. 38, pp. 4-7).

The § 1983 civil rights statute provides as follows:

> Every person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia*, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (emphasis added).

Thus, "[t]o state a section 1983 claim, a plaintiff *must allege facts* which show a deprivation of a right, privilege or immunity secured by the Constitution or federal law *by a person acting under color of state law*." *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883 (9th Cir. 1991) (emphasis added); *Davis v. John*, 485 F. Supp. 3d 1207, 1216 (C.D. Cal. 2020) ("It is axiomatic that a plaintiff asserting a section 1983 claim must allege that the defendant acted under color of state law when performing the challenged acts.").

Plaintiffs rely on the following language in the amended complaint to establish that the KWPH Defendants acted under color of law:

> American Ambulance [the business name of KWPH Enterprises, Inc.] contracts with CDCR to provide medical transportation and emergency medical services to individuals imprisoned at Corcoran. By contracting with CDCR, American Ambulance understood that it accepted the responsibility to perform its duties in conformity with the Constitution.

(ECF No. 8, p. 7). Elsewhere, the amended complaint alleges that the KWPH Defendants provided inadequate medical care to Decedent while transporting him to the hospital, *e.g.*, Linares and London failed to properly "perform high-quality CPR in line with Advanced Cardiovascular Life Support ("ACLS") standards." (*Id.* at 19).

The Court concludes that Plaintiffs have sufficiently alleged that the KWPH Defendants

are state actors for purposes of § 1983. As an initial matter, "[w]hether a private party engaged in state action is a highly factual question." *Brunette v. Humane Soc'y of Ventura Cnty.*, 294 F.3d 1205, 1209 (9th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Aug. 23, 2002). And as noted above, at the motion-to-dismiss stage, the Court must accept Plaintiffs' factual allegations as true and construe all reasonable inferences in their favor.

With this in mind, the Supreme Court has concluded that, because states are constitutionally obligated to provide adequate medical care to prisoners, a private physician under contract to provide medical care to inmates was properly considered a state actor for purposes of § 1983. *West v. Atkins*, 487 U.S. 42, 54 (1988) ("Respondent, as a physician employed by North Carolina to provide medical services to state prison inmates, acted under color of state law for purposes of § 1983 when undertaking his duties in treating petitioner's injury."). Additionally, the Ninth Circuit has concluded that it was improper for a court to *sua sponte* dismiss a § 1983 case because the complaint alleged "that defendants Maryvale Samaritan Hospital ('Maryvale') and Southwest Ambulance Service ('Southwest') are under contract with the state of Arizona to provide medical services to indigent citizens," which "allegations [were] sufficient to support a section 1983 action because . . .they set forth a claim that defendants Southwest and Maryvale act under color of state law." *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883 (9th Cir. 1991). Similarly, in a case in this District where a plaintiff alleged that a defendant, American Medical Response (AMR), had a contract for ambulance services for arrestees at a jail, the court rejected AMR's argument that it was not a state actor:

> AMR does not describe ways that the SAC's allegations might fall short of meeting the circumstances required for a private entity to be treated as a state actor. Here, the SAC alleges that AMR operated under contract with Placer County, a state actor (SAC ¶ 27(c)), and AMR does not address this allegation or its impact on the issue of AMR's Section 1983 liability. AMR has not shown that, as a matter of law, AMR cannot be liable for the constitutional violations alleged in the SAC's first claim for relief such that the claim warrants dismissal at this posture. Accordingly, the motion to dismiss the first claim for violations of the U.S. Constitution is denied.

*Rhodes v. Placer Cnty.*, No. 2:09-CV-00489 MCE, 2011 WL 1302264, at *7 (E.D. Cal. Mar. 31, 2011), *report and recommendation adopted*, 2011 WL 1739963 (E.D. Cal. May 4, 2011);

7

1    *see Gutzalenko v. City of Richmond*, 723 F. Supp. 3d 748, 758 (N.D. Cal. 2024) (denying

2    motion to dismiss based on argument that paramedic who worked "for a private emergency

3    ambulance company" was not a state actor); *Ayala v. Andreasen*, No. CIV S-04-0903-RRB-

4    CMK-P, 2007 WL 1395093, at *3 (E.D. Cal. May 10, 2007*), report and recommendation

5    adopted*, 2007 WL 4239813 (E.D. Cal. Nov. 29, 2007) (concluding that allegations in

6    complaint were sufficient to establish that the defendant, an otherwise private physician, acted

7    under color of law and it did "not make any difference that . . . [the] plaintiff was treated at an

8    outside facility"; rather, what mattered was that the defendant "performed medical services on

9    an inmate and that he did so pursuant to a contract between the state prison system and his

10   employer, Queen of the Valley Hospital").

11          Accordingly, because the complaint alleges that the KWPH Defendants were under

12   contract with CDCR to provide medical transportation and emergency medical services to

13   Corcoran prisoners, the Court will recommend denying the KWPH Defendants' motion to

14   dismiss based on their argument that Plaintiffs' fail to sufficiently allege that they were state

15   actors.

16                        **2.   Qualified immunity**

17          Alternatively, the KWPH Defendants argue that, if they were acting under color of law,

18   they would be entitled to qualified immunity under the *Perez* decision—their general

19   proposition being that a paramedic is entitled to qualified immunity for rendering emergency

20   medical services. (ECF No. 25-1, pp. 13-14). Plaintiffs counter that *Perez* does not apply

21   because it involved excessive force and that caselaw otherwise clearly establishes the right at

22   issue here. (ECF No. 38, pp. 7-8).

23          As an initial matter, it is important to note the stage at which the KWPH Defendants

24   seek dismissal based on qualified immunity. As the Ninth Circuit has noted, "[d]etermining

25   claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal

26   decision making." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018). "When, as here,

27   defendants assert qualified immunity in a motion to dismiss under Rule 12(b)(6), dismissal is

28   not appropriate unless [a court] can determine, based on the complaint itself, that qualified

8

immunity applies." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (citation and internal quotation marks omitted).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In determining whether a defendant is entitled to qualified immunity, the Court must decide (1) whether the facts shown by plaintiff make out a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. *Pearson*, 555 U.S. at 232. To be clearly established, a right must be sufficiently clear "that every 'reasonable  official would [have understood] that what he is doing violates that right.'" *Reichle v. Howards*, 132 S. Ct. 2088, 2090 (2012) (quoting *Al–Kidd*, 563 U.S. at 741) (alteration in original). This immunity protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In *Perez*, the case that forms the basis of the parties' dispute, the Ninth Circuit described the essential facts as follows:

> In 2017, at the direction of a paramedic, law-enforcement officers used their body weight to hold down and restrain Joseph Perez while he was prone in order to strap him to a backboard so he could be transported to a hospital for mental-health treatment. Perez asphyxiated and died. Plaintiffs—Perez's surviving family members—appeal the district court's grant of summary judgment on various 42 U.S.C. § 1983 claims in favor of the City of Fresno (the City), which oversees the Fresno Police Department (FPD); the County of Fresno (the County), which oversees the Fresno County Sheriff's Office (FCSO); a number of FPD and FCSO law-enforcement officers (collectively, the officers); and an American Ambulance paramedic.

98 F.4th at 921.

As to the paramedic, the Ninth Circuit concluded as follows:

> Because we conclude that the law did not clearly establish at the time of the events at issue that a paramedic restraining a person in order to secure the person for medical transport could be held liable for a constitutional violation under either the Fourth or Fourteenth Amendment, we conclude that [the paramedic] is entitled to qualified immunity.

*Id.* at 928.

Among other things, the Ninth Circuit observed that "there are few cases applying Fourth and Fourteenth Amendment standards to paramedics responding to medical emergencies," and there was no "precedent establishing constitutional liability under similar circumstances." *Id.* The Court noted however, that within "this context," other courts have made distinctions based on whether a paramedic acts in a law-enforcement capacity or emergency-medical-response capacity, with medical capacity claims sounding in medical malpractice. *Id.* at 929. The plaintiffs in *Perez* however, "did not present evidence from which a reasonable jury could find that [the paramedic] was acting in a law-enforcement capacity during his interaction with Perez." *Id.* at 930.

The Court does not find *Perez* dispositive here. The "context" that *Perez* addressed is materially different than this case—the legal claim here is for deliberate indifference to the serious medical needs of a prisoner under the Eighth Amendment, with Defendants purportedly being obligated to provide medical care to him under a contract with the CDCR. To consider *Perez* dispositive at this stage of the proceedings would violate the Supreme Court's instruction "not to define clearly established law at a high level of generality"; rather, the Court must consider qualified immunity "in light of the specific context of the case, not as a broad general proposition" and "[s]uch specificity is especially important in the Fourth Amendment context." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal citations omitted)

Third, "the law has been clearly established for some time, that deny[ing], delay[ing] or intentionally interfere[ing] with medical treatment violates the Eighth Amendment." *Mollica v. Cnty. of Sacramento*, No. 2:19-CV-02017-KJM-DB, 2023 WL 3481145, at *8 (E.D. Cal. May 16, 2023) (internal citation and quotations marks omitted, alterations in original); *Ramirez v. City of Chicago*, 82 F. Supp. 2d 836, 841 (N.D. Ill. 1999) (rejecting argument that paramedics were entitled to qualified immunity in connection with failing to provide medical attention to a person in police custody). Among other things, the first amended complaint alleges that the KWPH Defendants delayed providing Decedent medical care and administered low-quality CPR. (ECF No. 8, pp. 18-19).

Accordingly, because the complaint contains at least one allegation that could constitute

10

a violation of a clearly established right, Plaintiffs are entitled to proceed in this case, and the Court will recommend denying the KWPH Defendants' motion to dismiss based on their argument that they are entitled to qualified immunity.[4]

### 3. Bane Act claim

The KWPH Defendants also argue that Plaintiffs' Bane Act claim fails because Plaintiffs' allegations "have nothing to do with hate crimes, violence, threats, or coercion," which the KWPH Defendants contend are necessary to support such a claim. (ECF No. 25-1, p. 15). Additionally, they argue that language in the Bane Act referring to such an action being filed in California superior court means that state court "is the exclusive venue for any Bane Act claim." (*Id.*). Plaintiffs counter that the conduct at issue properly falls within the Bane Act and that such claims are properly asserted in Federal Court. (ECF No. 38, pp. 8-9).

The Bane Act prohibits persons from "interfere[ing] by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code § 52.1(b). The KWPH Defendants argue that Plaintiffs fail to provide allegations that implicate the statute's language. (ECF No. 25-1, p. 15). However, Plaintiffs cite authority broadly concluding that the coercion inherent with detention coupled with failing to adequately treat medical needs is sufficient to state a Bane Act claim. (ECF No. 38, pp. 8-9, citing *Shoar v. Cnty. of Santa Clara*, No. C 22-00799 WHA, 2022 WL 10177673, at *2 (N.D. Cal. Oct. 17, 2022)).

Their cited case, *Shoar*, relied on authority within this District to support its conclusion, specifically, *Page v. Cnty. of Madera*, No. 1:17:CV-00849-DAD-EPG, 2017 WL 5998227, at *4 (E.D. Cal. Dec. 4, 2017). In *Page* United States District Judge Dale A. Drozd, addressed Bane Act claims in connection with deliberate indifference allegations:

> As this court has noted, district courts in California have yet to reach a consensus as to whether a plaintiff bringing a Bane Act claim for deliberate

---

[4] These findings and recommendations should not to be construed as conclusively deciding the qualified immunity issue in either party's favor, and do not preclude KWPH Defendants from raising the qualified immunity issue later at an appropriate stage of this case.

indifference to serious medical needs must plead threats and coercion independent of the constitutional violation. *See Atayde v. Napa State Hospital*, No. 1:16-cv-00398-DAD-SAB, 2016 WL 4943959, at *7–8 (E.D. Cal. Sept. 16, 2016) (*comparing M.H. v. County of Alameda*, 90 F. Supp. 3d 889, 899 (N.D. Cal. 2013), *with Moreno v. L.A. Cty. Sheriff's Dep't*, No. 2:13-cv-07570-CAS(MANx), 2015 WL 4652637, at *18 (C.D. Cal. Aug. 3, 2015)). However, the undersigned has concluded that threats, coercion and intimidation are inherent in deliberate indifference claims, which "extend[ ] ... 'far beyond [an] ordinary tort claim[ ].'" *Atayde*, 2016 WL 4943959, at *8 (quoting *Venegas v. County of Los Angeles*, 32 Cal. 4th 820, 843 (2004)).

Defendant cites to the decisions in *Hernandez v. City of San Jose*, 241 F. Supp. 3d 959 (N.D. Cal. 2017) and *Lopez v. County of Tulare*, No. CV-F-11-1547-LJO-BAM, 2012 WL 33244 (E.D. Cal. 2012) in contending that plaintiff may not allege a Bane Act claim here. (Doc. No. 16-1 at 5–6.) In *Hernandez*, the district court concluded that a failure to act does not constitute a violation of the Bane Act, because some affirmative action is required. 241 F. Supp. 3d at 981. In *Lopez*, the court concluded that "[i]ncarceration coupled with deliberate indifference to medical and psychiatric needs does not constitute 'threats, intimidation, or coercion' for purposes of section 52.1." 2012 WL 33244, at *11. The undersigned has considered these decisions but comes, as have other district courts, to the opposite conclusion and therefore reaffirms its prior holding and reasoning. Plaintiffs bringing Bane Act claims for deliberate indifference to serious medical needs must only allege prison officials "knowingly deprived [them] of a constitutional right or protection through acts that are inherently coercive and threatening," such as housing a prisoner in an inappropriate cell, failing to provide treatment plans or adequate mental health care, and failing to provide sufficient observations. *Atayde*, 2016 WL 4943959, at *8, n.1.

*Id.* at *4 (footnote omitted).

The Court will follow this rationale, which has recently been referred to as "the developing majority rule." *D.M. v. City of Merced*, No. 1:20-CV-00409-JLT-SAB, 2024 WL 3540333, at *17 (E.D. Cal. July 25, 2024). Here, Plaintiffs allege that the KWPH Defendants, who contracted with CDCR to provide Decedent medical care, were deliberately indifferent to Decedent's serious medical needs, including by failing to provide adequate medical care when they arrived at Corcoran and in the intervening stages of his transport to the hospital. (ECF No. 8, pp. 18-20). Such allegations are sufficient to adequately plead a Bane Act claim.

Additionally, Defendants rely on the following provision of the Bane Act to argue that Plaintiffs may not bring any Bane Act claim in Federal court:

An action brought pursuant to subdivision (b) or (c) may be filed either in the superior court for the county in which the conduct complained of occurred or in

the superior court for the county in which a person whose conduct complained of resides or has their place of business.

Cal. Civ. Code § 52.1(d); (ECF No. 25-1, p. 15, also citing *Lewis v. Soto*, No. LA CV 15-2938 CJC (JCG), 2017 WL 11469999, at *8 (C.D. Cal. Sept. 15, 2017) ("Plaintiff may not file a complaint pursuant to section 52.1 of the California Civil Code in federal court. . . .")).

Plaintiffs argue that such claims may be brought in Federal court, citing California authority noting that Bane Act claims are frequently paired with § 1983 claims. (ECF No. 38, p. 9) (citing *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 801 (2017) (noting that "Section 52.1 claims are frequently brought along with Section 1983 claims under federal pendent jurisdiction").

The Court agrees with Plaintiffs. The KWPH Defendants' argument is at odds with the plain language of the supplemental jurisdiction statute, which in relevant part provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. In addition to the Federal cases already discussed above where Bane Act claims were at issue, the Ninth Circuit has noted that a district court has supplemental jurisdiction over a Bane Act claim. *Chinaryan v. City of Los Angeles*, 113 F.4th 888, 897 (9th Cir. 2024) ("The district court had jurisdiction over plaintiffs' § 1983 claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over their Bane Act claim pursuant to 28 U.S.C. § 1367."). Further, the cited provision does not purport to limit supplemental exercise of Federal jurisdiction but rather appears aimed at specifying the correct county for such an action, noting that a Bane Act claim "may be filed either in the superior court for *the county in which the conduct complained of occurred* or in the superior court for *the county in which a person whose conduct complained of resides or has their place of business*." Cal. Civ. Code § 52.1(d) (emphasis added).

Accordingly, because the complaint contains at least one allegation that could constitute a violation of the Bane Act, and the Court has supplemental jurisdiction over Bane Act claims, the Court will recommend denying the KWPH Defendants' motion to dismiss based on their arguments that a Bane Act claim is improper here.

13

Further, because the Court has concluded that all of the KWPH Defendants' arguments in support of their motion to dismiss fail, it will recommend that KWPH Defendants' motion to dismiss be denied in its entirety.

### B.    The KWPH Defendants' Motion to Strike

The KWPH Defendants move under California Code of Civil Procedure § 425.13 to strike references in the amended complaint to punitive damages because § 425.13 precludes a plaintiff from including punitive damages in a medical professional negligence complaint unless the court enters and order allowing an amended pleading that includes punitive damages. (ECF No. 26-1, p. 6). Plaintiffs counter by citing caselaw that § 425.13 is a procedural rule and does not apply in Federal court and thus there is no basis to strike their references to punitive damages.[5] (ECF No. 39, p. 4).

In relevant part, § 425.13 provides as follows:

> In any action for damages arising out of the professional negligence of a health care provider, no claim for punitive damages shall be included in a complaint or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive damages to be filed. The court may allow the filing of an amended pleading claiming punitive damages on a motion by the party seeking the amended pleading and on the basis of the supporting and opposing affidavits presented that the plaintiff has established that there is a substantial probability that the plaintiff will prevail on the claim pursuant to Section 3294 of the Civil Code.

Cal. Civ. Proc. Code § 425.13(a).

As the parties' briefs recognize, courts have differed on whether this provision applies in Federal court, with the KWPH Defendants citing caselaw[6] that it does and Plaintiffs citing

---

[5] The Court does not reach additional arguments unnecessary to the decision, such as Plaintiffs' argument that § 425.13 does not apply to Bane Act claims. (ECF No. 39, p. 3).

[6] The KWPH Defendants cite *Gutierrez v. M. Sandoval*, No. 1:20-CV-01130-JLT-EPG (PC), 2024 WL 325396 (E.D. Cal. Jan. 29, 2024), *report and recommendation adopted sub nom. Gutierrez v. Sandoval*, No. 2024 WL 1343125 (E.D. Cal. Mar. 29, 2024) for the proposition that "this procedure has been enforced in at least one other case currently on the docket of this very Court." (ECF No. 26-1, p. 8). The KWPH Defendants' reliance on *Gutierrez* is misguided. The cited portion of *Gutierrez* merely acknowledged prior procedural history in the case where a claim for punitive damages was dismissed pursuant to § 425.13. *Gutierrez*, 2024 WL 325396, at *1 n.2. The decision did not address the merits of the issue. Rather, a review of the record in *Gutierrez* reveals that the dismissal was based on the parties' stipulation, not any substantive decision on the law. *Gutierrez*, 1:20-CV-01130 (Order signed by then presiding United States District Judge Anthony W. Ishii at ECF No. 44, p. 1, "Accordingly, IT IS

14

1  caselaw that it does not. The Court ultimately finds the line of caselaw declining to apply

2  § 425.13(a) in Federal court more persuasive and agrees with the following rationale:

3         California district courts have split on whether Section 425.13 applies in federal
       court, and the Ninth Circuit has not resolved the split. *Elias*, 2017 WL 1013122,
4      at *5. Most courts addressing the issue have examined whether the rule is a
       procedural one that would not apply in federal court, or a substantive one that it
5      would. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188
       (1938). In *Jackson v. E. Bay Hosp.*, the court held that Section 425.13 "is
6      essentially a method of managing or directing a plaintiff's pleadings, rather than
       a determination of substantive rights" and declined to apply it, finding that the
7      procedural hoop was not "so intimately bound up" with the substantive law that
       it must be applied in a diversity case. 980 F.Supp. 1341, 1352 (N.D. Cal. 1997).
8      Relying on the California Supreme Court's explanation that the purpose of the
       rule was to establish a pretrial mechanism to determine whether an action for
9      punitive damages would be allowed to proceed, the court declined to graft this
       requirement onto federal litigation because "federal courts readily accomplish
10     the purposes contemplated by section 425.13 through their case management
       procedures. Section 425.13 does not supplant those." *Id.* at 1353 (citing *Cent.
11     Pathology Serv. Med. Clinic, Inc. v. Superior Court*, 3 Cal. 4th 181, 189, 10
       Cal.Rptr.2d 208, 832 P.2d 924 (1992). *See also Burrows v. Redbud Cmty. Hosp.
12     Dist.*, 188 F.R.D. 356, 361 (N.D. Cal 1997) ("[S]ection 425.13 is a procedural
       rule for managing and directing pleadings: it does not create substantive limits
13     on the damages a plaintiff may seek."). One district court found Section 425.13
       to be a procedural rule inapplicable in federal court because it conflicts with
14     Federal Rule of Civil Procedure 8(a)(3), which provides that "[a] pleading that
       states a claim for relief must contain ... a demand for the relief sought, which
15     may include relief in the alternative or different types of relief." Fed. R. Civ. P.
       8(a)(3). The court in *Estate of Prasad ex rel. Prasad v. County of Sutter* held
16     that "because Rule 8(a)(3) allows a plaintiff to request in her initial complaint all
       the relief she seeks, it says implicitly, but with unmistakable clarity[,] that a
17     plaintiff is not required to wait until a later stage of the litigation to include a
       prayer for punitive damages, nor is she required to proffer evidence or obtain
18     leave of court before doing so." 958 F.Supp.2d 1101, 1121 (E.D. Cal. 2013)
       (quoting *Cohen v. Office Depot, Inc.*, 184 F.3d 1292, 1298 (11th Cir. 1999)
19     (internal quotation marks omitted) (construing similar state law requiring leave
       of court to plead punitive damages claim), *opinion vacated in part on other
20     grounds on reh'g*, 204 F.3d 1069 (11th Cir. 2000) ). The Court agrees with the
       logic of these cases and holds that Section 425.13 does not affect the substance
21     of the negligence claim or burden of proof for punitive damages but merely
       manages the pleadings by dictating how and when a plaintiff may plead the

22

23

24

25

26

27

28     HEREBY ORDERED that, per the parties' stipulation (Doc. No. 32), Plaintiff's claim for punitive
       damages based on state law medical malpractice is DISMISSED without prejudice subject to possible
       reassertion by Plaintiff pursuant to the procedures of Cal. Code Civ. Pro. § 425.13.").

request. The claim for punitive damages survives for now. Defendants' motion to dismiss the prayer for punitive damages is **DENIED**. *Scalia v. Cnty. of Kern*, 308 F. Supp. 3d 1064, 1091 (E.D. Cal. 2018).

Accordingly, because the Court agrees that § 425.13 does not apply in this case, it will recommend denying the KWPH Defendants' motion to strike Plaintiffs' request for punitive damages.

### C.  Dr. Monterroso's Motion to Strike

Dr. Monterroso moves under Federal Rule of Civil Procedure 12(f) to strike Plaintiffs' references to punitive damages, alleging that "Plaintiffs have failed to allege sufficient facts to support a claim for punitive damages against [him]" under California Civil Code § 3294. (ECF No. 15-2, p. 3). Included with the motion is a request for the Court to take judicial notice of Plaintiffs' first amended complaint. (ECF No. 15-1, p. 2). The Court does not find it necessary to take judicial notice of documents "previously filed in the same case"; rather, "[a]n accurate citation will suffice." *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 954, 960 n.7 (N.D. Cal. 2014); *Ortega v. Univ. of Pac.*, No. CIV. S-13-1426-KJM, 2013 WL 6054447, at *3 (E.D. Cal. Nov. 15, 2013) ("This court need not take judicial notice of the very document [*i.e.*, the complaint] defendants are challenging and so denies the request."). Thus, it recommends denying the request for judicial notice as unnecessary.

Plaintiffs counter that Rule 12(f) is an improper basis to strike punitive damages and their "allegations provide Defendant Monterroso with adequate notice" under federal pleading standards. (ECF No. 23, p. 3). In support, they cite various allegations from the complaint, such as Dr. Monterroso's alleged delay in treating Decedent upon his arrival at the hospital. (*Id.* at 4).

As an initial matter, the Court agrees that Rule 12(f) is not an appropriate method to strike a claim for punitive damages "because a claim for damages does not satisfy one of the five categories of material that may be stricken under Rule 12(f)." *Fitch v. Galland*, No. 1:16-CV-00489-JLT, 2017 WL 1231869, at *7 (E.D. Cal. Jan. 6, 2017) (denying motion to strike allegations regarding punitive damages in complaint). However, where a Rule 12(f) motion is in substance a Rule 12(b)(6) motion to dismiss, "the Court may convert the Rule 12(f) motion

16

to a . . . motion to dismiss." *Yeager v. Corr. Corp. of Am.*, No. 1:12-CV-00162-AWI-JLT, 2012 WL 1067209, at *2 (E.D. Cal. Mar. 28, 2012), *report and recommendation adopted*, 2012 WL 1355690 (E.D. Cal. Apr. 18, 2012). Here, the Court will convert the motion to strike to a motion to dismiss.

Turning to the merits, the parties agree that California Civil Code § 3294(a) governs Plaintiffs' punitive damages request:

> (a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.
>
> . . . .
>
> (c) As used in this section, the following definitions shall apply:
>
>> (1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.
>>
>> (2) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.
>>
>> (3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

Cal. Civ. Code § 3294(a), (c)(1)-(3).

The parties agree that Federal pleading standards govern. (ECF No. 23, p. 3; ECF No. 24, p. 3). "Section 3294 sets the substantive requirements that must be met in order to obtain punitive damages, but Federal Rules of Civil Procedure 8 and 9 sets the pleading standards that must be met in federal court." *Coppola v. Smith*, 982 F. Supp. 2d 1133, 1144 (E.D. Cal. 2013). Under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *See Nuwintore v. United States*, No. 1:13-CV-00967-AWI-JLT, 2014 WL 807054, at *4 (E.D. Cal. Feb. 28, 2014), *report and recommendation adopted*, 2014 WL 1333998 (E.D. Cal. Apr. 3, 2014) (noting that Rule 9(b) applied in connection with § 3294).

The parties central dispute is whether Plaintiffs' allegations are sufficient to support a

17

request for punitive damages. Defendants contend that, "[w]hile Plaintiffs' [first amended complaint] is full of descriptive adjectives and legal conclusion, the bare facts do not demonstrate that Dr. Monterroso acted with malice, oppression, recklessness, or fraud." (ECF No. 15-2, p. 6). The Plaintiffs summarize the following facts as applicable to Dr. Monterroso to argue that his conduct is sufficient to support a claim for punitive damages.

> The First Amended Complaint alleges that Mr. Boscaino arrived at Adventist Health Hanford emergency room at 8:23 a.m. under code blue. (ECF No. 8, ¶ 97.) Every minute of delay reduced Mr. Boscaino's chance of survival, yet Dr. Monterroso waited seven minutes before making contact with him. (*Id.*) Although he knew Mr. Boscaino was experiencing a cardiac event due to the nature of the circumstances, including the lack of cardiac activity detected, Dr. Monterroso delayed the administration of tenectaplase, a potent lifesaving medication, for approximately 22 minutes. (*Id.*) He did not order cardiac monitoring or defibrillation at any point. (*Id.*) Instead, he administered ineffective drugs in unknown quantities and chest compressions at unknown times and intervals. (*Id.*) Such allegations are not conclusory and provide adequate notice to defendant Monterroso of the basis for punitive damages.

(ECF No. 23, p. 3).

The Court agrees with Plaintiffs, reiterating that it must accept their factual allegations as true and draw all reasonable inferences in their favor. Their allegations are not merely "descriptive adjectives and legal conclusion," rather, the gist of their complaint is that Dr. Monterroso, despite knowing of the danger to Decedent, delayed care, failed to provide proper medical treatment, and administered ineffective care. Such allegations at least plausibly indicate despicable conduct carried out by Dr. Monterroso with a willful and conscious disregard of the rights or safety of Decedent. *See Kevorkian v. Safeco Ins. Co. of Am.*, No. 3:23-CV-00229-RBM-DDL, 2023 WL 6612497, at *10 (S.D. Cal. Oct. 10, 2023) ("At this juncture, Plaintiffs' factual allegations concerning Defendant Safeco's incomplete, deficient, and cursory inspection of Plaintiffs' claim are sufficient to plausibly state a claim for punitive damages under Section 3294 based on oppression or malice. Plaintiffs allege Defendant Safeco's conduct in failing to reasonably investigate and evaluate Plaintiffs' claim was intentional and done to sacrifice Plaintiffs' interests for its own financial gain. Such allegations are sufficient to plausibly claim that Defendant Safeco engaged in despicable conduct carried on with a willful

and conscious disregard of Plaintiffs' rights or despicable conduct that subjects Plaintiffs to cruel and unjust hardship in conscious disregard of their rights.") (internal citation to record omitted).

Accordingly, because Plaintiffs have provided sufficient allegations in support of their request for punitive damages, the Court will recommend that Dr. Monterroso's motion to dismiss—as converted from a motion to strike—be denied.

### D. Adventist Health Hanford's Motion to Strike

Defendant Adventist Health Hanford (Adventist) moves under Federal Rule of Civil Procedure 12(f) to strike Plaintiffs' references to punitive damages, alleging that (1) Plaintiffs' allegations are insufficient to support a punitive damages award under § 3294(a) regarding the malice, oppression, or fraud requirement; and (2) "[e]ven if the Plaintiffs could prove that [its] agents acted with the requisite *mens rea*, nowhere in the [amended complaint] do the Plaintiffs allege that a 'managing agent,' exercising any semblance of corporate authority, had advanced knowledge and conscious disregard of any employees unfitness," for purposes of § 3294(b), which imposes additional requirements to obtain punitive damages when an employer is involved. (ECF No. 42-1, p. 6).

Included with the motion is a request for the Court to take judicial notice of Plaintiffs' first amended complaint. (ECF No. 42-2, p. 1). Like with Dr. Monterosso's request discussed above, it is not necessary for the Court to take judicial notice of the amended complaint filed in this case; thus, it recommends denying the request for judicial notice as unnecessary.

Plaintiffs counter that Rule 12(f) is an improper basis to strike punitive damages and that, for the reasons discussed above in connection with Dr. Monterroso's motion, their allegations are sufficient to satisfy the malice, oppression, or fraud requirement for § 3294(a) against Adventist, which allegedly contracted with Dr. Monterroso to provide medical services. (ECF No. 48, pp. 2-3). As for the additional requirements imposed under § 3294(b) to obtain punitive damages for a corporate employer, Plaintiffs argue that their allegations that Adventist ratified Dr. Monterroso's conduct are sufficient. (*Id.* at 4-5).

As an initial matter, the Court once again concludes that Rule 12(f) is not an appropriate

method to strike a claim for punitive damages, but like Dr. Monterroso's motion to strike, it

will convert the motion to strike to a motion to dismiss.[7]

Turning to the merits, the Court agrees—for the reasons discussed in connection with

Dr. Monterroso's motion—that Plaintiffs' allegations are sufficient to meet the malice,

oppression, or fraud requirement for § 3294(a).

Accordingly, the Court turns to the parties' remaining dispute, whether Plaintiffs have

satisfied the additional requirements for employers under § 3294(b), which provides as follows:

> An employer shall not be liable for damages pursuant to subdivision (a), based
> upon acts of an employee of the employer, unless the employer had advance
> knowledge of the unfitness of the employee and employed him or her with a
> conscious disregard of the rights or safety of others or authorized or ratified the
> wrongful conduct for which the damages are awarded or was personally guilty
> of oppression, fraud, or malice. With respect to a corporate employer, the
> advance knowledge and conscious disregard, authorization, ratification or act of
> oppression, fraud, or malice must be on the part of an officer, director, or
> managing agent of the corporation.

Cal. Civ. Code § 3294(b).

There is no dispute here that Adventist is a corporate employer, and the amended

complaint alleges as follows: "Adventist Health Hanford is a corporation, duly organized and

existing under the laws of the State of California and is the contractor of Mark Monterroso,

who provides medical services to its patients." (ECF No. 8, p. 8). Regarding the corporate

employer requirements of § 3294(b), one court has noted as follows:

> To be considered an officer, director, or managing agent, and individual must be
> a member of the "group whose intentions guide corporate conduct." *See Cruz v.
> HomeBase*, 83 Cal.App.4th 160, 166, 99 Cal.Rptr.2d 435 (2000). Thus, the
> employee must "exercise[ ] substantial discretionary authority over significant
> aspects of a corporation's business." *White v. Ultramar, Inc.*, 21 Cal.4th 563,
> 573, 88 Cal.Rptr.2d 19, 981 P.2d 944 (1999). Individuals "who have no
> discretionary authority over decisions that ultimately determine corporate policy
> would not be considered managing agents event though they may have the
> ability to hire or fire other employees." *Id.* at 577, 88 Cal.Rptr.2d 19, 981 P.2d
> 944.

---

[7] In its reply, Adventist recognizes that its motion was improperly filed under Rule 12(f) but argues that this is not fatal as the Court may convert its motion to a Rule 12(b)(6) motion to dismiss. (ECF No. 50, pp. 2-3).

*Yeager*, 2012 WL 1067209, at \*4.

Here, Adventist argues that Plaintiffs fail to allege that a managing agent (or similar person) acted with the advanced knowledge and conscious disregard (or similar conduct) to permit an award of punitive damages. (ECF No. 42-1, p. 6). In response, Plaintiffs point to the following passage of their complaint to argue that they meet § 3294(b)'s requirements:

> Plaintiffs are further informed, believe, and thereon allege that each of the defendants herein, whether known or unknown, gave consent, aid, and assistance to each of the remaining defendants, whether known or unknown, and ratified and/or authorized the acts or omissions of each defendant, whether known or unknown, as alleged herein, except as may hereinafter be otherwise, specifically alleged.

(ECF No. 48, pp. 4-5, citing ECF No. 8, p. 8).

While the Court acknowledges that courts have taken different approaches to the level of specificity needed to comply with § 3294(b), it concludes that Plaintiffs' allegations are insufficient.

Importantly, Plaintiffs allegations that Adventist ratified Dr. Monterroso's conduct, without any supporting facts to explain how this was so, fail to meet the additional requirements to obtain punitive damages for employers. The Court finds instructive the following reasoning granting a motion to dismiss punitive damages under § 3294(b) based on similar allegations:

> Plaintiffs allege, in conclusory fashion, that Amazon "had advance knowledge of the malicious, fraudulent, and/or oppressive activities of the individual perpetrators whose actions and conduct were authorized, approved, and/or ratified by Defendant['s] directors, officers, and/or managing agents." (Doc. 1-1 at ¶ 14.) These are the exact type of conclusory allegations and threadbare recitals of the elements of a cause of action that cannot suffice at the motion to dismiss stage.

*Rizvanovic v. Amazon.com Servs., LLC*, No. 1:21-CV-01804-JLT-CDB, 2024 WL 1886495, at \*13 (E.D. Cal. Apr. 30, 2024). The same holds true here, and thus the Court will recommend granting Adventist's converted motion to dismiss Plaintiffs' request for punitive damages.

However, given the liberal standard for granting leave to amend under Federal Rule of Civil Procedure 15(a)(2), and because there does not appear to be undue delay, bad faith,

21

dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment, the Court will recommend granting Plaintiffs' request that they be granted leave to amend their complaint to cure any deficiency in their allegations against Adventist. *Id.* at 15 (granting leave to amend despite dismissing request for punitive damages); (ECF No. 48, p. 5 – "Should this Court grant any part of [Adventist's] motion, plaintiffs respectfully request leave to amend their complaint.").

## V.    CONCLUSION, ORDER, AND RECOMMENDATIONS

As Roy Boscaino is not listed as a plaintiff in the first amended complaint, IT IS ORDERED that the Clerk of Court is directed to terminate him as a pending plaintiff on the docket.

And for the reasons given above, IT IS RECOMMENDED as follows:

1. The KWPH Defendants' motion to dismiss (ECF No. 25) be denied.

2. The KWPH Defendants' motion to strike (ECF No. 26) be denied.

3. Dr. Mark Monterroso's motion to dismiss (as converted from a motion to strike) (ECF No. 15) be denied.

4. Adventist Health Hanford's motion to dismiss (as converted from a motion to strike) (ECF No. 42) be granted and Plaintiffs' request for punitive damages as to Adventist Health Hanford be dismissed.

5. Dr. Monterroso's and Adventist Health Hanford's requests for judicial notice be denied as unnecessary. (ECF Nos. 15-1, 42-2).

6. Plaintiffs be granted leave to file an amended complaint only for the purpose of adding allegations related to their request for punitive damages against Adventist Health Hanford.

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within fourteen (14) days after being served with a copy of these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and

Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **January 29, 2025**                    /s/ *Erica P. Grosjean*
                                                                 UNITED STATES MAGISTRATE JUDGE