UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF VINCENT FRANK BOSCAINO, JR., *et al.*,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>ADVENTIST HEALTH HANFORD, *et al.*,<br><br>　　　　　　Defendants. | Case No. 1:24-cv-00689-JLT-EPG<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT ADVENTIST HEALTH HANFORD'S MOTION TO DISMISS BE DENIED<br><br>(ECF No. 66)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS |

**I.     INTRODUCTION**

Plaintiffs' second amended complaint, filed in part under 42 U.S.C. § 1983, brings Federal and California state law claims, primarily alleging that various Defendants failed to provide adequate medical care to Decedent Vincent Frank Boscaino, Jr., which ultimately led to his death. (ECF No. 91). Pertinent here, Plaintiffs allege California state law medical negligence, negligence, and wrongful death and survival claims against Defendant Adventist Health Hanford (Adventist). (*Id.* at 30-32).

Adventist has moved to dismiss Plaintiff's claims against it, arguing that the Court does not have, or should otherwise decline to exercise, supplemental jurisdiction over the state law claims. (ECF No. 66). The presiding District Judge referred this motion for the preparation of findings and recommendations. (ECF No. 69).

For the reasons given below, the Court will recommend that Adventist's motion to dismiss be denied.

## II. BACKGROUND

### A. Procedural History

Plaintiffs filed this case on June 12, 2024, and amended their complaint on August 20, 2024. (ECF Nos. 1, 8). On December 9, 2024, Adventist moved to strike references in the first amended complaint to Plaintiffs' request for punitive damages, which motion the Court converted to a motion to dismiss. (ECF No. 42; ECF No. 51, pp. 19-20). The Court recommended granting the converted motion to dismiss on January 29, 2025, but also recommended giving Plaintiffs leave to amend their complaint only to add punitive damages allegations against Adventist. (ECF No. 51, p. 22). The assigned District Judge adopted these recommendations on September 30, 2025. (ECF No. 78).

However, before the findings and recommendations were adopted, Adventist filed its instant motion to dismiss Plaintiffs' first amended complaint on September 17, 2025. (ECF No. 66, p. 2). Plaintiffs filed their opposition on October 15, 2025, and Adventist filed its reply on October 27, 2025.[1] (ECF Nos. 82, 89).

Following the District Judge's adoption of the findings and recommendations allowing Plaintiffs to amend their complaint to add punitive damages allegations against Adventist, Plaintiffs filed their second amended complaint on October 30, 2025, which is now the operative complaint in this case. (ECF No. 91). Adventist filed an answer to the second amended complaint on November 13, 2025, and did not move to dismiss it. (ECF No. 98).

### B. Summary of the Second Amended Complaint

Plaintiffs are the Estate of Vincent Frank Boscaino, Jr. (administered by Shannon Villarroel); James Boscaino (Decedent's brother and successor in interest); Ronald Boscaino (Decedent's brother and successor in interest); Catherine Doss (Decedent's sister and successor in interest); and Susan Moss (Decedent's sister and successor in interest). (ECF No. 91).

The second amended complaint names thirty Defendants and also lists "Does 1-100." (*Id.* at 1) (capitalization omitted). Some of the allegations are aimed at prison employees or

---

[1] Plaintiffs moved to strike Adventist's reply brief as late but later withdrew that motion on November 21, 2025. (ECF Nos. 93, 106). Accordingly, the Court has considered Adventist's reply brief.

2

entities (referred to as California Department of Corrections and Rehabilitation (CDCR) Defendants)) and concern Decedent's incarceration, including at California State Prison, Corcoran. Generally, the second amended complaint alleges that Decedent was the victim of a conspiracy by CDCR employees "to deliberately fabricate criminal allegations against [him], setting into motion a series of events that exacerbated [his] known mental and physical illnesses and disability, and accelerated his deterioration." (*Id.* at 2). These events purportedly started around October 27, 2021, and on June 14, 2023, Decedent "died as a result of the deliberate indifference to his serious medical needs." (*Id.*).

Other allegations relate to the day of Decedent's death. Plaintiffs allege that, on June 13, 2023, Decedent "began experiencing pressure and pain in his chest." (*Id.* at 17). Although this eventually subsided, the pressure and pain returned the next morning—*i.e.*, on June 14, leading Decedent to inform CDCR medical staff. (*Id.* at 17-18).

CDCR employees allegedly failed to recognize signs that Decedent was experiencing the onset of a heart attack. (*Id.* at 18). Ultimately, a CDCR nurse "requested American Ambulance transport [Decedent] to Kaweah Medical Center for cardiac irregularity." (*Id.*). American Ambulance is the business name of Defendant KWPH Enterprises, Inc., and it "contracts with CDCR to provide medical transportation and emergency medical services to individuals imprisoned at Corcoran." (*Id.* at 7). Defendant KWPH Enterprises, Inc. employs four of the Defendants as either paramedics or emergency medical technicians: (1) Daniel Linares; (2) Mark London; (3) Manuel Sandoval; and (4) Samuel Taylor.[2] (*Id.* at 7-8).

The KWPH Defendants allegedly provided inadequate medical care to Decedent in connection with his transport to a hospital. For example, Linares and London delayed transporting Decedent despite knowing that he faced "an emergency situation and time was of the essence." (*Id.* at 18). Further, Linares and London "did not perform high-quality CPR" and "failed to prepare the defibrillation pads," resulting in a "6-minute delay to defibrillate" Decedent that "led to the restricted blood flow to [Decedent's] brain, body, and heart, and

---

[2] Unless otherwise specified, the Court will collectively refer to these Defendants as the KWPH Defendants.

irreversible acid build-up." (*Id.* at 19).

Ultimately Decedent was rerouted from Kaweah Medical Center to Adventist. (*Id.*). Plaintiffs include the following allegations against Adventist.

> Mr. Boscaino was transported to Adventist Health Hanford, a general acute care hospital with a basic emergency room service level. . . . For emergency room physicians, Adventist Health Hanford contracts with a physician-owned and led organization that incentivizes its "owner" and "partner" doctors through bonuses based on metrics that depend upon, among other things, high throughput and volume that compromise patient care and safety. Despite its duties, Adventist Health Hanford and its officers, directors, and managing agents failed to implement, update, and enforce appropriate and compliant policies, such as its code blue policy, and failed to provide appropriate training to its contract physicians and employed medical staff, and failed to implement the supervision, oversight, and evaluation necessary to ensure compliance with established standards of emergency medical and cardiac-related care. Prior to and on the date of Mr. Boscaino's death, Adventist Health Hanford and its officers, directors, and managing agents also failed to maintain adequate staffing levels and emergency response capability, including code blue response team members, creating unsafe conditions that foreseeably placed patients, including Mr. Boscaino, at substantial risk of harm. . . .
>
> Mr. Boscaino arrived at Adventist Health Hanford emergency room at 8:23 a.m. under code blue, where an insufficient number of appropriately skilled medical personnel were available to respond, resulting in a delayed and inadequate emergency intervention. Seven minutes after arrival, Dr. Mark Monterroso saw Mr. Boscaino at 8:30 a.m. The delay to attend to a code blue cardiac arrest at a critical time demonstrated Dr. Monterroso's breach of his duty of care, reckless disregard, and gross negligence. He administered Amiodarone, lidocaine, sodium bicarbonate, and epinephrine in unknown quantities. He administered chest compressions at unknown times and intervals. He performed a glucose test strip but ordered no other laboratory work, cardiac monitoring, or defibrillation. Dr. Monterroso had a duty of care to complete a comprehensive medical assessment but failed to do so. Over 20 minutes after arrival, he administered an unknown dose of tenectaplase at approximately 8:45 a.m. Multiple pulse checks were taken for 20 minutes, and no cardiac activity by ultrasound or by detection was seen. Such actions, including the unjustified delay in providing a potent lifesaving medication, were a breach of Dr. Monterroso's duty of care and demonstrated reckless disregard and gross negligence for Mr. Boscaino. Adventist Health Hanford and its officers, directors, and managing agents were aware of and ratified the systemic risks, understaffing, training and oversight deficiencies, deficient and unenforced policies, and profit-driven treatment and negligent care provided by Dr. Monterroso that compromised Mr. Boscaino's safety, and despite Adventist Health Hanford and its officers, directors, and managing agents' awareness and ratification, they failed to address, rectify or

>intervene, in conscious and reckless disregard for Mr. Boscaino's life. . . .
>
>Dr. Monterroso pronounced Mr. Boscaino dead at 9:04 a.m.

(*Id.* at 20-22).

Plaintiffs bring § 1983 claims against certain CDCR Defendants and the KWPH Defendants, including for deliberate indifference to Decedent's serious medical needs, in part, regarding the events of June 14, 2023. (*Id.* at 25). Additionally, Plaintiffs bring the following state law claims against certain CDCR Defendants, the KWPH Defendants, Adventist, and Dr. Monterroso: (1) medical negligence; (2) wrongful death and survival claim; and (3) negligence. (*Id.* at 30-32). For each of these claims, Plaintiffs allege as follows:

>Adventist Health Hanford is the contractor of defendant Mark Monterroso who was acting in the course and scope of his contract when he was negligent. As such, Adventist Health Hanford is liable for the conduct of defendant. Adventist Health Hanford and its managing agents are also liable for negligent hiring, contracting, training, and supervision, in addition to concealment and failure to maintain safe and adequate staffing and facilities.

(*Id.* at 31-32).

### C. Adventist's Motion to Dismiss

Adventist's motion to dismiss argues that the state law claims against it do not derive from a common nucleus of operative facts as to the Federal claims and thus the Court lacks supplemental jurisdiction over the state law claims. (ECF No. 66-1, p. 10). Alternatively, it argues that, if supplemental jurisdiction exists, the Court should decline to exercise such jurisdiction based on considerations such as the complexity of state law issues. (*Id.* at 13).

Plaintiffs' opposition argues that their deliberate indifference claims against certain CDCR Defendants and the KWPH Defendants are predicated on the same chain of events as the claims against Adventist and thus derive from a common nucleus of operative facts to exercise supplemental jurisdiction. (ECF No. 82, p. 4). Further, Plaintiffs contend that the relevant considerations do not warrant declining supplemental jurisdiction. (*Id.* at 5).

Adventist's reply generally reiterates its arguments for dismissal. (ECF No. 89).

\\\
\\\

### III. LEGAL STANDARDS

In a civil case where a district court has original jurisdiction, it also "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C.A. § 1367(a). "A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together." *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) (citation omitted).

However, "a federal district court with power to hear state law claims has discretion to keep, or decline to keep, them under the conditions set out in § 1367(c)." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1999). These conditions are as follows:

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
>
> > (1) the claim raises a novel or complex issue of State law,
> >
> > (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> >
> > (3) the district court has dismissed all claims over which it has original jurisdiction, or
> >
> > (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c)(1)-(4).

"While discretion to decline to exercise supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in § 1367(c), it is informed by the . . . values of economy, convenience, fairness, and comity." *Acri*, 114 F.3d at 1001 (internal citations and quotation marks omitted).

### IV. ANALYSIS

As an initial matter, the Court recommends that Adventist's motion to dismiss be denied because it is aimed at a superseded complaint. Adventist moved to dismiss Plaintiffs' claims against it in Plaintiff's first amended complaint. After that time, on October 30, 2025, Plaintiff filed a second amended complaint. (ECF No. 91). Rather than renew its motion to dismiss,

6

Adventist chose to answer Plaintiff's second amended complaint. (ECF No. 98).

As the Ninth Circuit has observed, there is a "well-established doctrine that an amended pleading supersedes the original pleading" and thus, "after amendment[,] the original pleading no longer performs any function and is treated thereafter as non-existent." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992), *as amended* (May 22, 1992) (citation and quotation marks omitted). Thus, Plaintiffs' second amended complaint has rendered moot Adventist's motion to dismiss the first amended complaint. *See Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) ("Because the Defendants' motion to dismiss targeted the Plaintiff's First Amended Complaint, which was no longer in effect, we conclude that the motion to dismiss should have been deemed moot before the district court granted it."). Moreover, Adventist has chosen to answer Plaintiff's second amended complaint, rather than move to dismiss it.

Nevertheless, the Court has evaluated Adventist's jurisdictional arguments raised in its motion to dismiss to ensure that this Court has jurisdiction over Plaintiffs' claims against it. For the following reasons, the Court recommends continuing to exercise supplemental jurisdiction over the state law claims asserted against Adventist.

The Federal and state law claims derive from a common nucleus of operative fact. Specifically, the facts concern "a series of events that exacerbated Mr. Boscaino's known mental and physical illnesses and disability, and accelerated his deterioration," culminating in his death on June 14, 2023, from inadequate medical care. (ECF No. 91, p. 2). In particular, the § 1983 deliberate indifference claims against the CDCR and KWPH Defendants, and the state law claims against Adventist, allege similar facts regarding how Defendants contributed to Decedent's death. For example, both the Federal and state law claims concern alleged delay in treating Decedent. Among other things, Plaintiffs allege that, on the date of Decedent's death, a CDCR Defendant, RN Andrzejewski, "was deliberately indifferent to Mr. Boscaino's medical needs by not calling for an ambulance to immediately transport Mr. Boscaino to a medical facility" after documenting symptoms that indicated "the onset of a heart attack." (ECF No. 91, p. 18). Defendants Linares and London delayed defibrillating Decedent, which "led to the restricted blood flow to Mr. Boscaino's brain, body, and heart, and irreversible acid build-up."

7

(*Id.* at 19). As to Adventist, when "Mr. Boscaino arrived at Adventist Health Hanford emergency room at 8:23 a.m. under code blue, [there were] an insufficient number of appropriately skilled medical personnel . . . available to respond, resulting in a delayed and inadequate emergency intervention." (*Id.* at 21). Accordingly, the issue of each Defendant's contribution, if any, to Decedent's death through inadequate medical care means that there is likely to be an overlap in witnesses and evidence in this case.

Moreover, not only are operative events in this case factually related, but they occurred close in time. *See Rhodes v. Placer Cnty.*, No. 2:09-CV-00489 MCE, 2011 WL 1302264, at *24 (E.D. Cal. Mar. 31, 2011), *report and recommendation adopted*, No. 2:09-CV-00489-MCE, 2011 WL 1739963 (E.D. Cal. May 4, 2011) (concluding that supplemental jurisdiction was proper where the complaint alleged "a temporally-connected chain of events"). CDCR Defendant Andrzejewski documented Plaintiff's initial symptoms on June 14, 2023, at 7:02 a.m. (ECF No. 91, p. 18). By 9:04 a.m., Decedent was pronounced dead. (*Id.* at 22). Plaintiffs claims in this case allege that Defendants failed to appropriately treat decedent during this approximate two-hour window, leading to his death. During this brief time period, Plaintiffs allege that CDCR Defendants failed to recognize the signs of a heart attack, the KWPH Defendants failed to perform high quality CPR, and Adventist and its contracted doctor, Dr. Mark Monterroso, failed to ensure Decedent was treated in a timely manner.

Moreover, Plaintiffs' claims against Adventist are based on its contractual relationship with co-defendant Dr. Monterroso. (*See* ECF No. 91, p. 31 – "Adventist Health Hanford is the contractor of defendant Mark Monterroso who was acting in the course and scope of his contract when he was negligent. As such, Adventist Health Hanford is liable for the conduct of defendant."). Dr. Monterroso has not moved to dismiss the case or otherwise argued that the Court should decline jurisdiction over the claims against him. Thus, because the claims against Adventist stem in large part from Adventist's role as the employer of Dr. Monterroso, the claims against them should remain together in this case.

In short, the Court concludes that it has supplemental jurisdiction over the claims against Adventist and there are not sufficient grounds to decline jurisdiction.

## V. CONCLUSION AND RECOMMENDATIONS

For the reasons explained above, IT IS RECOMMENDED that

1. Adventist Health Hanford's motion to dismiss be denied. (ECF No. 66).

These findings and recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within fourteen (14) days after being served with a copy of these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **December 9, 2025**                    /s/ Erica P. Grosjean
                                                 UNITED STATES MAGISTRATE JUDGE